### McGUIRE v. TRUSTEES OF ST. PATRICK'S CATHEDRAL.

(*Supreme Court, Special Term, New York County.   January 7, 1889.*)

1. CEMETERIES—DENOMINATIONAL CEMETERY—RIGHT OF BURIAL.
    A person purchasing the right of interment in a Roman Catholic cemetery acquires it subject to the condition that the person for whom it is exercised shall have died in communion with the Roman Catholic Church.
2. RELIGIOUS SOCIETIES—MEMBERSHIP—JURISDICTION OF CIVIL COURTS.
    Whether a person died in the faith of the Roman Catholic Church is not a question within the jurisdiction of the civil courts, but must be decided by the ecclesiastical authorities.

Action by Philip McGuire, administrator of John McGuire, for an injunction against the trustees of St. Patrick's Cathedral.

*Post & Barnes,* for plaintiff.   *Thomas G. Barry,* for defendants.

BEACH, J.   I am unable to conceive in what material respect this case differs in its facts from *Coppers* v. *Trustees,* 21 Hun, 184.   The contracts and receipts are identical, the same defendant corporation denying the like right of sepulture in its cemetery.   There can be no utility in discussing questions within the limits of authoritative adjudication.   To apprehend what legal proposition there may be in the case at bar, not considered and settled by the *Coppers Case,* its principles may well be restated.   The court there held that a contract resting in parol existed between the defendant corporation and the purchaser of a lot, its terms to be sought from surrounding circumstances, in connection with the receipt and subsequent use of the plot.   Those surrounding circumstances were the rules, regulations, and customs of the defendant with regard to burials in its cemetery.   Presumption of knowledge of denominational character was charged upon every applicant, with the power to enact rules and regulations.   The learned court says: "Where a party applies for a burial plot at the office of a distinctively Roman Catholic cemetery, it is with the tacit understanding that he is either a Roman Catholic, and, as such, eligible to burial, or at least that he applies on behalf of those who are in communion with the church."   The contract relations thus specified are enforced at length by clear reasoning, and supported with indisputable decisions.   It is a palpable deduction that the intestate, John McGuire, who bought the right of interment, acquired it subject to the condition that, for whomsoever exercised, the person must have died in communion with the Roman Catholic Church.   I cannot imagine a condition more reasonable, or more closely united and vitally connected with the principal, if not the sole, object of a denominational cemetery.

The complaint in this action avers that John McGuire died intestate February 19, 1888, "in the faith of the Roman Catholic Church." The latter fact is denied by answer, and the learned counsel for plaintiff admits it "to be the only issue in the case about which there is any controversy." It appeared on the trial that the defendants had refused interment because McGuire had not died in the faith or communion of the church, and the plaintiff gave proof tending to show that he did. Thus arises the first and most important inquiry, whether or not this is a question proper for decision by this court. The point was not raised by any issue in *Coppers' Case*, consequently was not discussed, and furnishes here the only additional subject for consideration. It certainly is not a fact to be proven, but at most a conclusion resultant from a specific religious belief, indicated, so far as may be, by individual action conforming with established tenets of the church. What treatise upon principles of the common law or equity jurisprudence, what commentaries upon statutory enactments, are to be consulted to forward and aid judicial investigation? To place in the strongest light, assume proofs to have been given that the intestate regularly attended church services, held detailed articles of religious faith, still there is no legal principle or authority for a civil tribunal to adjudge him to have been a member of the Roman Catholic Church. I know of neither adjudication nor commentary to inform the court what articles of faith and what course of life are absolutely essential to, or what derelictions in performance of religious duty or backsliding in faith may depose from, the position. It seems impossible that civil tribunals can be called upon to exercise their functions in a domain so foreign to judicial knowledge. No better illustration can be had than in the case at bar. The evidence on plaintiff's behalf tended to show that the intestate infrequently attended church, and received the sacraments. Suppose he did, what is and whence flows the principle of law whereunder he is to be decreed in the Roman Catholic faith at his death? Manifestly there is no fountain of legal knowledge upon that subject. Plainly the question is without the limit of judicial investigation. There have been submitted extracts from the writings of learned theologians, and edicts from councils of the church, showing to my mind what is the nature of the question at issue, and what must be the proper tribunal for its decision. In my opinion, its nature is purely religious, appropriate for decision by the empowered authorities of the church. Among its officials will be found the tribunal. In the writings of the learned expounders of doctrinal faith and rules of spiritual life, with which conformity is shown by visible act, must appear the principles appropriate for investigation, and necessary as a foundation for intelligent and conscientious decision. There is no injustice done by remission to such a forum, because the claim of membership in the faith necessarily subjects a claimant to the jurisdiction of ecclesiastical authority, represented by those who are officially its exponents and representatives.

In *Robertson* v. *Bullions*, 9 Barb. 64, this court was held without power to remove an officer of a religious corporation, or to disfranchise a member. Being unable to pass upon a member's right to vote, much less is there authority to adjudicate upon membership itself. There is authoritative supervision in the courts over those who manage temporal properties, resting upon principles of contract and trusteeship. Upon this proposition may be cited *Shannon* v. *Frost*, 3 B. Mon. 253, directly ruling that the court "could not decide who ought to be members of the church, nor whether the excommunicated have been regularly cut off."

There is another argument leading to a similar conclusion. It was shown on the trial that a decision upon the right to ecclesiastical burial in this instance had been made by the ordinary of the diocese, who is the controlling local authority. In my opinion, the court should not, and will not, review that or any decision upon matters of faith, discipline, or doctrine. Whatever relief there may be must come by appeal to higher church authority, as pro-

vided by the judicatory procedure of the church. In *Reformed Church* v. *Seibert*, 3 Pa. St. 282, the court said: "The decisions of ecclesiastical courts, like every other judicial tribunal, are final, as they are the best judges of what constitutes an offense against the Word of God and the discipline of the church. Any other than those courts must be incompetent judges of matters of faith, discipline, and doctrine; and civil courts, if they should be so unwise as to attempt to supervise on matters which come within their jurisdiction, would only involve themselves in a sea of uncertainty and doubt which would do anything but improve either religion or good morals." Again, in *Bouldin* v. *Alexander*, 15 Wall. 139, the court say: "This is not a question of membership of the church, nor of the rights of members as such. It may be conceded that we have no power to revise or question ordinary acts of church discipline, or of excision from membership. We have only to do with rights of property."

To my mind these adjudications fully support the views I have expressed and the conclusion reached. Decree for defendants, dismissing complaint, with costs.